No. 97,896

In the Matter of TOMMY LEWIS GREEN, *Respondent*.

(156 P.3d 628)

Opinion filed April 27, 2007.

*Stanton A. Hazlett*, disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*John J. Ambrosio*, of John J. Ambrosio, Chartered, of Topeka, argued the cause for respondent, and *Tommy Lewis Green*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Tommy L. Green, of Topeka, an attorney admitted to the practice of law in Kansas. The formal complaint filed against the respondent alleged violations of Kansas Rules of Professional Conduct (KRPC) including KRPC 1.1 (2006 Kan. Ct. R. Annot. 358) (competence), KRPC 1.2(a) (2006 Kan. Ct. R. Annot. 367) (representation), KRPC 1.3 (2006 Kan. Ct. R. Annot. 371) (diligence), KRPC 1.4(a) (2006 Kan. Ct. R. Annot. 386) (communication), KRPC 1.5(a) (2006 Kan. Ct. R. Annot. 401) (fees), KRPC 1.15(a) and (b) (2006 Kan. Ct. R. Annot. 435) (safekeeping property), KRPC 1.16(a) and (d) (2006 Kan. Ct. R. Annot. 448) (representation), KRPC 3.2 (2006 Kan. Ct. R. Annot. 462) (expediting litigation), KRPC 8.1(b) (2006 Kan. Ct. R. Annot. 505) (bar admission and disciplinary matters), KRPC 8.4(b) (2006 Kan. Ct. R. Annot. 510) (misconduct), and Kansas Supreme Court Rule 207(b) (2006 Kan. Ct. R. Annot. 268) (duties of the bar).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. Upon the conclusion of the hearing, the panel made the following findings of fact and conclusions of law together with its recommendations to this court:

### "FINDINGS OF FACT

"The Hearing Panel finds the following facts, by clear and convincing evidence:

"1. Tommy L. Green (hereinafter 'the Respondent') is an attorney at law. . . . His last registration address with the Clerk of the Appellate Courts of

Kansas is . . . Topeka, Kansas. . . . The Respondent was admitted to the practice of law in the state of Kansas on April 10, 1978.

"DA9294—Complaint filed by Janet Campbell

"2.    In January 2004, Janet Campbell retained the Respondent to represent her in conjunction with a wrongful termination and a defamation case. Ms. Campbell provided the Respondent with the original copy of related documents.

"3.    On January 20, 2004, Ms. Campbell paid the Respondent $1,500.00 in advance for attorney fees. While Ms. Campbell and the Respondent did not enter into a written fee agreement, the Respondent orally informed Ms. Campbell that he charged $150.00 per hour.

"4.    On January 22, 2004, the Respondent prepared and sent a demand letter to Ms. Campbell's former employer. The Respondent provided a copy of the letter to Ms. Campbell.

"5.    On February 20, 2004, the Respondent received a letter from an attorney representing Ms. Campbell's former employer. The Respondent did not forward a copy of the letter to Ms. Campbell nor did he explain the contents of the letter to Ms. Campbell.

"6.    In March and April 2004, Ms. Campbell called the Respondent repeatedly. Many of the calls went unanswered. On one occasion, the Respondent informed Ms. Campbell that he had been exchanging telephone messages with her former employer's insurance company but that he had not been able to make contact.

"7.    In April 2004, on another occasion, the Respondent told Ms. Campbell that he had been ill and he encouraged her to keep calling him to get information about the case.

"8.    Following the telephone conversation she had with the Respondent in April 2004, Ms. Campbell made numerous telephone calls to the Respondent. She called him approximately once a week, leaving messages for the Respondent to return the call. The Respondent did not return the telephone calls.

"9.    In early June 2004, Ms. Campbell left a message for the Respondent, informing him that she wished to terminate his services as her attorney and asked him to deduct the fee for the letter he had written and refund the balance of the $1,500.00 to her. Additionally, Ms. Campbell left a number of messages for the Respondent asking him to return the original documentation.

"10.   Twice, Ms. Campbell's husband stopped by the Respondent's office, without an appointment, in an attempt to retrieve the original documentation. Unfortunately, no one was in the Respondent's office on those occasions.

"11.   On August 8, 2004, Ms. Campbell sent the Respondent a letter and again advised the Respondent that he was terminated. In the letter, she repeated her demand for the return of the unearned fees and original documentation.

"12.   Also on August 8, 2004, Ms. Campbell filed a complaint with the Disciplinary Administrator's office.

"13.   During the disciplinary investigation, the Respondent acknowledged that he had a received the February 20, 2004, letter from an attorney representing

Ms. Campbell's former employer. The Respondent also acknowledged that he did not forward a copy of the letter to Ms. Campbell nor did he explain the contents of the letter to her.

"14. On October 27, 2004, the Respondent met with an investigator regarding Ms. Campbell's complaint. The Respondent promised the investigator that he would send a letter to Ms. Campbell apologizing for not returning the file to her. He also assured the investigator that he would send an accounting of his time to Ms. Campbell and reimburse her for the unearned portion of the fees paid. Finally, the Respondent agreed to send a copy of the documents that he provided to Ms. Campbell to the investigator.

"15. In November 2004, Ms. Campbell contacted the Disciplinary Administrator's office because the Respondent had not forwarded the original documents nor the unearned fees to her. The Disciplinary Administrator contacted the Respondent regarding this matter. On November 18, 2004, the Respondent finally returned the file.

"16. Eventually, the Respondent returned $500.00 to Ms. Campbell. However, the Respondent never accounted for his time. Ms. Campbell filed a claim with the Client Protection Fund and was awarded $1,000.00.

"DA9555—Complaint filed by Benoit M.J. Swinnen

"17. On December 10, 2004, Bruce Harrington filed a petition in behalf of his client, Kerry Gasper, in the District Court of Shawnee County, Kansas. In the petition, Mr. Gasper sought to collect on a promissory note executed by John Sims. Mr. Sims retained the Respondent to represent him in conjunction with the suit filed by Mr. Gasper. The Respondent, however, did not enter his appearance in the pending case.

"18. The Respondent failed to file an answer or counterclaim in behalf of Mr. Sims in response to Mr. Gasper's petition.

"19. Thereafter, on January 21, 2005, the Court entered default judgment in the amount of $15,000.00 against Mr. Sims. Thereafter, Mr. Harrington filed a number of garnishment requests [as] to Mr. Sims.

"20. On April 29, 2005, Mr. Gasper filed a request for garnishment as to the Sims-Kemper Corporation, Mr. Sims' corporation and employer. In addition to representing Mr. Sims, the Respondent also represented the Sims-Kemper Corporation.

"21. The Respondent failed to answer the request for garnishment in behalf of the Sims-Kemper Corporation. On April 29, 2005, the Court entered a garnishment order as to the Sims-Kemper Corporation. Kaw Valley State Bank and Trust Company paid $3,934.93 into the Court as a result of the garnishment order.

"22. After the Court entered the garnishment order, Mr. Sims retained Benoit Swinnen to represent Sims-Kemper Corporation. Mr. Swinnen resolved the matter.

"23. Even though the Respondent had represented the Sims-Kemper Corporation for an extended period of time, the Respondent failed to keep the cor-

porate filings with the Kansas Secretary of State current. In fact, the Sims-Kemper Corporation had not filed the appropriate documentation since 1999.

"24.   On May 16, 2005, Mr. Swinnen filed a complaint against the Respondent with the Disciplinary Administrator's office. The Respondent failed to cooperate in the investigation of the complaint.

<u>"DA9582</u>—Complaint filed by [Sue Palenske]

"[25].   Sue Palenske retained the Respondent to represent her in an action against her former employer, Westar Energy. On May 16, 2002, Ms. Palenske filed a complaint with the Kansas Human Rights Commission (KHRC) alleging discrimination based upon sex and disability. In addition, Ms. Palenske also alleged that Westar retaliated against her. Ms. Palenske filed a similar complaint with the Equal Employment Opportunity Commission (EEOC).

"26.   On March 27, 2003, the EEOC issued a notice of right to sue letter regarding Ms Palenske's claims under Title VII and the American with Disabilities Act (ADA). The EEOC instructed Ms. Palenske that she had 90 days to file suit after she received the notice.

"27.   On June 19, 2003, the Respondent filed a complaint in behalf of Ms. Palenske against Westar Energy in the United States District Court for the District of Kansas, alleging violations of Title VII, the ADA, the Family Medical Leave Act (FMLA), the Employment Retirement Income Security Act (ERISA), and the Kansas Act Against Discrimination. Additionally, the Respondent included a common law claim that Ms. Palenske was wrongfully terminated. The Respondent failed to effect service on Westar Energy.

"28.   On July 15, 2004, the Court issued an order to show cause to the Respondent for failure to effect service. The Respondent failed to respond. Accordingly, on September 15, 2004, the Court dismissed the case for a lack of prosecution.

"29.   Thereafter, on December 14, 2004, the Respondent filed a second complaint against Westar Energy in behalf of Ms. Palenske. The second complaint was identical to the first complaint. On March 18, 2005, the Respondent had a copy of the second complaint hand-delivered to Westar Energy and left at the front desk.

"30.   On March 29, 2005, Westar Energy sent the Respondent a letter detailing why Ms. Palenske's claims lack merit and violated Fed. R. Civ. Proc. 11. In the letter, Westar Energy stated that Ms. Palenske's federal claims asserted in the second complaint were barred by the applicable statutes of limitation and that the state law claims were not properly brought in federal court. The Respondent did not respond to the letter.

"31.   On April 21, 2005, Westar Energy filed a motion to dismiss and motion for sanctions. The Respondent failed to respond to the motions.

"32.   On April 29, 2005, the court issued an order setting a scheduling conference which required the parties to conduct a meeting pursuant to Fed. R. Civ. Proc. 26(f) no later than May 6, 2005. Attorneys for Westar Energy attempted

several times to contact the Respondent by telephone, electronic mail, and by regular mail. The Respondent did not respond to the attorneys for Westar Energy.

"33. On May 17, 2005, the Respondent contacted Mindy McPheeters, an attorney for Westar Energy and informed her that he approved the Fed. R. Civ. Proc. 26(f) report that Westar Energy had prepared. During that conversation, the Respondent made a request for an extension of time to file his responses to the motion to dismiss and the motion for sanctions. Westar Energy did not agree to the extension of time because the time for filing had already passed at the time he made his request. The Respondent informed Ms. McPheeters that he would be filing a motion for leave to file the responses out-of-time shortly. The Respondent did not file a motion to leave to file the responses out-of-time.

"34. On May 27, 2005, the Court conducted a scheduling conference by telephone. Judge O'Hara stayed discovery pending a ruling on Westar Energy's motions. The Respondent informed the Court that he had not filed his responses to the motions because of computer problems and because he had been busy on other matters. The Respondent informed the Court that he would be filing a motion for leave to file his responses out-of-time 'within the next week.' The Respondent did not file a motion for leave to file the responses out-of-time.

"35. On October 5, 2005, the court dismissed Ms. Palenske's case without prejudice. In the order, the Court noted that the Respondent had not filed a response to the defendant's motion to dismiss.

"36. On October 7, 2005, the Court issued an order to show cause to the Respondent to show why sanctions should not be imposed. The Respondent did not respond to the order to show cause.

"37. On November 7, 2005, the Court found that the Respondent violated Fed. R. Civ. Proc. 11(b) and that counsel for Westar Energy was entitled to reasonable attorney's fees charged to prepare the motion to dismiss and motion for sanctions. On January 4, 2006, the Court approved counsel for Westar Energy's request for $8,596.13 in attorney fees. The Court order did not specify whether the Respondent was to pay the sanction or whether Ms. Palenske was to pay the sanction.

"DA9583—Complaint filed by Kenneth D. Jones

"38. On June 10, 2005, Kenneth D. Jones filed a complaint against the Respondent. The Respondent failed to cooperate in the investigation of the complaint.

"DA9736—Complaint filed by Dia Fox

"39. On April 20, 2005, Steven Weir, a Topeka attorney, filed suit against Dia Fox in the District Court of Shawnee County, Kansas, claiming that Ms. Fox owed him money.

"40. On May 26, 2005, Mr. Weir obtained service of process on Ms. Fox. Ms. Fox retained the Respondent to represent her in the cause of action. On June 17, 2005, the Respondent filed an answer in behalf of Ms. Fox.

"41. On June 22, 2005, Mr. Weir served Ms. Fox with a request for admissions. The Respondent did not respond to the request for admissions.

"42. On July 12, 2005, Mr. Weir filed a motion for summary judgment. The Respondent did not respond to the motion for summary judgment.

"43. On August 2, 2005, the Court held a pretrial conference. At the pretrial conference, the Respondent first told Ms. Fox that Mr. Weir filed a motion for summary judgment.

"44. On August 3, 2005, the Respondent requested additional time to respond to Mr. Weir's motion for summary judgment. However, the Respondent did not request additional time to respond to Mr. Weir's request for admissions. The Court granted the Respondent's request for additional time to respond to Mr. Weir's motion for summary judgment, allowing the Respondent until August 19, 2005, to respond. The Respondent did not respond to Mr. Weir's motion for summary judgment by August 19, 2005.

"45. On August 24, 2005, the Court granted Mr. Weir's motion for summary judgment.

"46. On August 25, 2005, the Respondent filed a response to Mr. Weir's motion for summary judgment and a response to the request for admissions. Also on August 25, 2005, Ms. Fox spoke with the Respondent. The Respondent did not advise her that judgment had been entered against her.

"47. On September 21, 2005, Mr. Weir sought an order of garnishment.

"48. Ms. Fox has consistently maintained that there was no merit to the contract claim made against her. After Mr. Weir began garnishment proceedings, Ms. Fox terminated the Respondent's representation. Thereafter, she obtained new counsel. To date, Ms. Fox's new counsel has tried, unsuccessfully, to set aside the judgment entered against her.

"DA9739—Complaint filed by Jason Kahrs

"49. In March 2005, Jason Kahrs retained the Respondent to represent him regarding overtime and tax issues with his former employer. The Respondent suggested a contingent fee agreement, whereby the Respondent would receive 50% of any recovery. The Respondent informed Mr. Kahrs that he would forward a written fee agreement. However, the Respondent did not forward a written fee agreement.

"50. At the time he retained the Respondent, Mr. Kahrs provided the Respondent with necessary papers including tax documents, pay stubs, and documents regarding hours worked by Mr. Kahrs. The Respondent assured Mr. Kahrs that he would be in contact when he had information regarding his case.

"51. After Mr. Kahrs provided the documents to the Respondent, the Respondent failed to communicate with Mr. Kahrs. Mr. Kahrs called the Respondent approximately 40 times. The Respondent failed to return any of the calls. Eventually, the Respondent's telephone was disconnected.

"52. When the Respondent failed to respond to his telephone calls, Mr. Kahrs terminated the Respondent's representation, retained new counsel, and requested that the Respondent forward the documents, previously provided, to his new counsel.

"DA9815—Complaint filed by Terry Schattilly

"53. Terry Schattilly retained the Respondent to represent her in an employment dispute with her employer, Burlington Northern Santa Fe Railway (BNSF). The Respondent informed Ms. Schattilly that he would charge her $150.00 per hour for the representation. Ms. Schattilly paid the Respondent a total of $2,600.00.

"54. In November 2004, the Respondent filed a case in the United States District Court for the District of Kansas, in behalf of Ms. Schattilly against BNSF, seeking damages under the FMLA.

"55. On March 26, 2005, Ms. Schattilly notified the Respondent that she was moving to Fort Worth, Texas, and she provided the Respondent with her new contact information.

"56. Thereafter, Ms. Schattilly repeatedly called the Respondent regarding the representation. However, the Respondent did not return the telephone calls. In fact, Ms. Schattilly has not spoken with the Respondent since the telephone call on March 26, 2005.

"57. On August 10, 2005, the Respondent and counsel for BNSF stipulated to the dismissal of Ms. Schattilly's case without prejudice. The Respondent, however, did not have authorization from Ms. Schattilly to stipulate to the dismissal of the case. Additionally, the Respondent did not inform Ms. Schattilly that he had stipulated to the dismissal of the case. Ms. Schattilly learned of the dismissal by calling the Clerk of the United States District Court for the District of Kansas.

"58. On January 28, 2006, Ms. Schattilly notified the Respondent in writing that she was terminating his representation. In the letter, Ms. Schattilly complained of the lack of communication, requested an accounting showing how much of the fee was earned, requested a return of any unearned fees, and requested that the Respondent return her file to her. The Respondent did not provide Ms. Schattilly with an accounting, he did not return any unearned fees, and he did not return Ms. Schattilly's file to her as requested.

"Impairments

"59. The Respondent is an alcoholic and a drug addict.

"60. The Respondent began using cocaine in approximately 1981. The Respondent used cocaine in social settings on a periodic basis. The Respondent continued to use cocaine and later, crack cocaine, from 1981 to October 2005. The frequency of use varied over time.

"61. From 1990 through 1998, the Respondent worked for KP&L, later known as Western Resources. KP&L subjected its employees to random urinanalysis. The Respondent was able to control his usage of crack cocaine and would use the drug only when he knew he was going to be away from the office for a period of time and would not be subjected to a drug test.

"62. After leaving Western Resources in November 1998, the Respondent was unable to control the amount of crack cocaine he used. For approximately one year, the Respondent did little other than sit in his basement and smoke crack cocaine.

"63. In May 1999, the Respondent attempted to discontinue using crack cocaine. The Respondent was able to control his use of crack cocaine for [a] short time. In August 1999, the Respondent began using crack cocaine more and more.

"64. In November 2000, the Respondent was again better able to control the amount of crack cocaine he used. He could go for period[s] of 90 or 120 days without using crack cocaine.

"65. In May 2001, the Respondent went to drug and alcohol treatment. The Respondent attended a day program from 7:30 a.m. to 5:30 p.m., five days a week. The Respondent continued to 'work his program' until April 2002.

"66. The Respondent resumed using crack cocaine in 2002 and continued until he went to treatment again in the summer of 2003. In 2003, the Respondent went to treatment at Sims-Kemper in Topeka. The Respondent's treatment at Sims-Kemper was again, outpatient treatment.

"67. During his treatment at Sims-Kemper and for a period of time following treatment, the Respondent used crack cocaine 'socially.'

"68. By September 2004, the Respondent was using crack cocaine on a 'very frequent basis.' In November 2004, the Respondent realized that his use was again out of control. Because he had completed two drug treatment programs, the Respondent knew what he needed to do. Beginning November 23, 2004, and continuing through February or March 2005, the Respondent attended an AA meeting at least once a day.

"69. Beginning in March 2005, the Respondent used crack cocaine every day. By August 2005, the Respondent did nothing other than smoke crack cocaine. The Respondent continued the constant use of crack cocaine through September 2005.

"70. On September 30, 2005, Don Zemites went to the Respondent's home and knocked on his door. The Respondent did not answer his door. Mr. Zemites crawled through a door on the Respondent's patio and knocked on the Respondent's bedroom window. The Respondent did not answer the knocking. Mr. Zemites also left a telephone message for the Respondent. After Mr. Zemites left, the Respondent called Mr. Zemites back. The Respondent agreed to be at Mr. Zemites' office the following Monday to go to inpatient drug treatment.

"71. On October 2, 2005, the night before he went to treatment, an acquaintance came by the Respondent's home. The Respondent and his acquaintance smoked crack cocaine for a period of six or seven hours.

"72. On October 3, 2005, the Respondent went to Mr. Zemites' office and Mr. Zemites took the Respondent to an inpatient treatment facility in Kansas City. Since October 3, 2005, the Respondent has not used crack cocaine.

"73. According to the Respondent, he suffers from depression and attention deficient disorder.

"Disciplinary Proceedings

"74. On March 2, 2006, the Disciplinary Administrator filed a Formal Complaint and Notice of Hearing in DA9294, DA9555, DA9582, and DA9583. The

hearing was scheduled for April 18, 2005. Shortly before the scheduled hearing, the Respondent retained counsel and the hearing was continued.

"75. On June 26, 2006, the Respondent filed a probation plan. The Respondent put his plan into effect at that time.

"76. On July 26, 2006, the Disciplinary Administrator amended the Formal Complaint and included DA9736, DA9739, and DA9815. Thereafter, the Respondent filed an Answer stipulating to the facts and rule violations alleged in the Amended Formal Complaint.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact and the Respondent's stipulation, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 1.16, KRPC 3.2, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207, as detailed below.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' KRPC 1.1. The Respondent failed to competently represent Ms. Campbell when he failed to use the thoroughness and preparation necessary to complete the representation. The Respondent took no action when he received a letter from an attorney representing Ms. Campbell's former employer. The Respondent also failed to competently represent Ms. Palenske. The Respondent failed to competently represent Ms. Palenske when he included allegations in the petition that had not been in the claim, when he failed to effect service on Westar Energy after filing the first petition, when he failed to respond to orders to show cause, and when he failed to respond to a motion to dismiss and a motion for sanctions. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. KRPC 1.2(a) provides:

'A lawyer shall abide by a client's decisions concerning the lawful objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means which the lawyer shall choose to pursue. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.'

The Respondent violated KRPC 1.2(a) when he stipulated to the dismissal of Ms. Schattilly's case without her permission. The Hearing Panel concludes that the Respondent violated 1.2(a).

"4. Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Ms. Campbell, Mr. Sims, Ms. Palenske, Ms. Fox, Mr. Kahrs, and Ms. Schattilly. Because the Respondent failed to act with reasonable diligence and promptness in representing Ms. Campbell, Mr. Sims, Ms. Palenske, Ms. Fox, Mr. Kahrs, and Ms. Schattilly, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"5.   KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to keep Ms. Campbell, Mr. Sims, Ms. Fox, Mr. Kahrs, and Ms. Schattilly informed regarding their representations. Each of these clients attempted, on numerous occasions, to contact the Respondent regarding their representation. The Respondent repeatedly failed to return telephone calls and failed to respond to letters. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"6.   'A lawyer's fee shall be reasonable.' KRPC 1.5(a). Ms. Schattilly paid the Respondent $2,600 to represent her in an action against BNSF. The only work that the Respondent did for Ms. Schattilly was to file the complaint in the United States District Court for the District of Kansas. After filing suit, the Respondent took no further action in Ms. Schattilly's behalf. Therefore, the Hearing Panel concludes that the Respondent's fee was unreasonable and in violation of KRPC 1.5(a).

"7.   Attorneys must safeguard client's property, as follows:

'A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.' KRPC 1.15(a).

Pursuant to KRPC 1.15(a), the Respondent should have deposited the advance fees paid by Ms. Campbell and Ms. Schattilly into his attorney trust account. The Respondent did not deposit and maintain the advance fees in his attorney trust account, rather, the Respondent took the advance fees paid by Ms. Campbell and Ms. Schattilly and converted them to his personal use. Thus, the Respondent violated KRPC 1.15(a) when he failed to maintain Ms. Campbell's advance fee and Ms. Schattilly's advance fee in his trust account until the fees were earned. As such, the Hearing Panel concludes that the Respondent violated KRPC 1.15(a).

"8.   Upon request by a client, a lawyer 'shall promptly render a full accounting.' KRPC 1.15(b). Ms. Schattilly requested that the Respondent provide an accounting of the fee. Additionally, Ms. Schattilly requested that the Respondent return the unearned fees. The Respondent never provided Ms. Schattilly or the Hearing Panel with an accounting of the fee. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.15(b).

"9.   KRPC 1.16(a) prohibits an attorney from representing a client when 'the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client.' At the time the Respondent represented Ms. Fox, Mr. Kahrs, and Ms. Schattilly, he was using crack cocaine on a very frequent basis and his use of crack cocaine impaired his ability to represent his clients. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.16(a).

"10.   KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The Respondent violated KRPC 1.16(d) when he failed to return Ms. Campbell's, Mr. Kahrs', and Ms. Schattilly's documentation. The Hearing Panel concludes that, accordingly, the Respondent violated KRPC 1.16(d).

"11.   An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. In this case, the Respondent failed to expedite *Gasper v. Sims*, the Respondent failed to expedite Ms. Palenske's cases, and the Respondent failed to expedite the litigation filed by Mr. Weir against Ms. Fox. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"12.   'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, the Respondent admitted he possessed cocaine and crack cocaine repeatedly for a period spanning 24 years. Possession of cocaine and possession of crack cocaine are felony offenses. Accordingly, the Hearing Panel concludes that the Respondent committed criminal acts and those criminal acts reflect directly on the Respondent's fitness as a lawyer, in violation of KRPC 8.4(b).

"13.   Lawyer must cooperate in disciplinary investigations. KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b) provide the requirement in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' KRPC 8.1(b).

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.' Kan. Sup. Ct. R. 207(b).

The Respondent knew that he was required to cooperate in the disciplinary investigations. The Respondent failed to do so in regarding Mr. Swinnen's complaint and Mr. Jones' complaint. Because the Respondent knowingly failed to cooperate in the disciplinary investigations, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b) and Kan. Sup. Ct. R. 207(b).

"AMERICAN BAR ASSOCIATION
STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered

the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide competent and diligent representation, to provide adequate communication, and to safeguard property. Also, the Respondent violated his duty to the legal system to expedite litigation. Further, the Respondent violated his duty to the legal profession to cooperate in disciplinary investigations and maintain personal integrity. Finally, the Respondent violated his duty to the legal system by participating repeatedly and extensively in illegal activity, *i.e.*, purchasing and using crack cocaine.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual harm to his clients, to the legal system, and to the legal profession.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"A Pattern of Misconduct. Included in this case are seven complaints. A number of the complaints involve similar misconduct. Accordingly, the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 1.16, KRPC 3.2, KRPC 8.1, KRPC 8.4, and Kan. Sup. Ct. R. 207. As such, the Respondent committed multiple offenses.

"Vulnerability of Victim. The Respondent's clients were vulnerable to the Respondent's misconduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1978. At the time the Respondent engaged in misconduct affecting clients, the Respondent had been practicing law for more than twenty years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Illegal Conduct, Including that Involving the Use of Controlled Substances. The Respondent testified that he possessed and used cocaine and crack cocaine beginning in 1981 and continuing through September 2005. The possession of cocaine and crack cocaine is a felony offense.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"<u>Absence of a Prior Disciplinary Record</u>. The Respondent has not previously been disciplined.

"<u>Personal or Emotional Problems if Such Misfortunes have Contributed to a Violation of the Kansas Rules of Professional Conduct</u>. The Respondent testified that he suffers from depression and attention deficit disorder. The Hearing Panel concludes that the Respondent's mental health status may have contributed to the violations.

"<u>Remorse</u>. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.' Standard 4.12.

'Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.' Standard 4.42.

'Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.' Standard 5.12.

## "RECOMMENDATION

"The Deputy Disciplinary Administrator recommended that the Respondent be indefinitely suspended. The Respondent recommended that he be placed on probation pursuant to his plan put into effect months before the hearing.

"In 2004, the Kansas Supreme Court adopted a rule which dictates the procedure to follow when a Respondent requests probation:

'(g) Requirements of Probation

(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.' Kan. Sup. Ct. R. 211(g).

The Hearing Panel has carefully reviewed the Respondent's plan of probation. The Hearing Panel would like to express its sincere congratulations to the Respondent in maintaining his sobriety for a period now exceeding one year. However, it is the opinion of the Hearing Panel that probation is not appropriate in this case. First, the Respondent's plan of probation is not workable, substantial, detailed. The safeguards suggested in the plan [do] not appear to be sufficient to protect the public from the potential for relapse which has recurred repeatedly in the past in the Respondent's history of drug and alcohol abuse. Additionally, the Hearing Panel does not conclude that the Respondent's misconduct can be corrected by probation at this time. In light of the Respondent's history of relapse, sufficient time has not passed since the Respondent obtained sobriety. Moreover, no workable plan for restitution was proposed. Finally, the Hearing Panel concludes that it is not in the best interests of the legal profession and the citizens of Kansas to place the Respondent on probation, first and foremost because the Respondent's repeated illegal conduct in drug use and purchases cannot be adequately disciplined by mere probation.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be indefinitely suspended from the practice of law in the state of Kansas."

The respondent filed no exceptions to the panel's final hearing report. The court, having considered the final hearing report, accepts and adopts the findings of fact and conclusions of law of the panel. The findings of the panel establish by clear and convincing evidence that the respondent violated KRPC 1.1, KRPC 1.2, KRPC 1.3, KRPC 1.4, KRPC 1.5, KRPC 1.15, KRPC 1.16, KRPC 3.2, KRPC 8.1, KRPC 8.4, and Kansas Supreme Court Rule 207.

Respondent acknowledged the above violations and expressed sincere remorse for such violations. In addition, respondent has

outlined before this court his great efforts to permanently re-establish a life of sobriety. We acknowledge those efforts and encourage the respondent to continue with his many activities relating to those efforts. At the same time, considering the oral presentation of the Disciplinary Administrator, the circumspect recommendations of the panel, the oral presentations of counsel for the respondent and respondent, the court concludes that the best interest of the public and the respondent support the panel's recommendation for indefinite suspension. We adopt those reasons set forth by the panel in arriving at its recommendation of indefinite suspension to this court.

Both respondent and his counsel acknowledged that the plan of probation submitted to this court by respondent is not adequate to protect the interest of the public in this case. Counsel and respondent request that this court grant respondent additional time to submit a more detailed plan which may address all of the concerns of this court. In their presentations, a number of additional conditions were suggested that are presently being carried out by the respondent. Respondent has experienced success with his sobriety since October 2005. As indicated above, we laud respondent's successful efforts, but we are not convinced that the additional conditions of probation suggested by respondent are capable of being monitored unless undertaken as a full time project. We are further convinced that the panel's recommendation is appropriate in respondent's case. We therefore deny respondent's request for additional time to submit a new plan of probation and impose the discipline recommended.

IT IS THEREFORE ORDERED that respondent, Tommy L. Green, be and he is hereby indefinitely suspended from the practice of law in the state of Kansas, effective on the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2006 Kan. Ct. R. Annot. 243).

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 218 (2006 Kan. Ct. R. Annot. 314), and in the event respondent would seek reinstatement, he shall comply with Supreme Court Rule 219 (2006 Kan. Ct. R. Annot. 327).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to respondent.

LUCKERT, J., not participating.

MARQUARDT, J., assigned.